IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| GREGORY P. BARNETT,<br># A4000428,<br><br>        Petitioner,<br><br>    vs.<br><br>TODD THOMAS,<br><br>        Respondent.<br>_____ | )  CIVIL NO. 07-00491 SOM-BMK<br>)<br>)<br>)  SUPPLEMENTAL FINDINGS<br>)  AND RECOMMENDATION<br>)  TO DISMISS PETITION AND<br>)  ORDER DENYING BARNETT'S<br>)  MOTION FOR DETERMINATION<br>)  THAT BARNETT'S CURRENT<br>)  PETITION WAS TIMELY FILED<br>) |

**SUPPLEMENTAL FINDINGS AND RECOMMENDATION
TO DISMISS PETITION AND ORDER DENYING BARNETT'S
MOTION FOR DETERMINATION THAT
<u>BARNETT'S CURRENT PETITION WAS TIMELY FILED</u>**

Before the court is pro se Petitioner Gregory P. Barnett's petition for

writ of habeas corpus ("Petition"), brought under 28 U.S.C. § 2254. This court

entered its first Findings and Recommendation on May 9, 2008, wherein the court

recommended dismissal of Barnett's Petition as untimely. (Doc. No. 77.)

On May 19, 2008, Barnett filed an "Objection to Findings and

Recommendation, Et Cetera, Filed May 9, 2008," ("Objection"). (Doc. No. 79.)

District Judge Susan Oki Mollway remanded Barnett's Objection on May 21,

2008, for additional findings. (Doc. No. 82.)

Barnett raises four grounds in objection to the May 9, 2008 Findings and Recommendation.[1]  As to Grounds One, Two and Three, Barnett submits no manifest error, or new facts or evidence previously unavailable.  This court has fully addressed these grounds in previous orders and will not reconsider them here.  The court does address Ground Four, that the court failed to consider the "mailbox rule"[2] in calculating the limitations period under 28 U.S.C. § 2244(d).  Applying the "mailbox rule," Barnett's petition is timely.[3]

For the following reasons, this court FINDS that Barnett's Petition is timely, but that all of Barnett's grounds for relief are without merit, and RECOMMENDS that his Petition be DISMISSED in its entirety.  Barnett's Motion for Determination that Barnett's Current Petition was Timely Filed is DENIED as moot.  (Doc. No. 89).

---

[1] Barnett's objections include that: (1) the court abused its discretion when it *sua sponte* raised the issue of statute of limitations ("Ground One"); (2) jurisdiction of this Petition fall under *Barnett v. Sedillo, et al.*, Civ. No. 00-00456 DAE, because Barnett filed an amended petition before a certificate of appealability was issued in Civil No. 00-00456 DAE ("Ground Two"); (3) this Petition should be filed *nunc pro tunc* to July 3, 2000 ("Ground Three"); and (4) the court failed to consider the "mailbox rule" when it calculated the limitations period under 28 U.S.C. § 2244(d) ("Ground Four").

[2] Under the "mailbox rule," a prisoner's legal document is deemed filed on the date the prisoner delivers it to prison officials for mailing.  *See Houston v. Lack*, 487 U.S. 266 (1988).

[3] In light of the "mailbox rule," the filing dates provided throughout this Order reflect the dates on which Barnett signed the document and, at the earliest, turned the document over to prison officials for mailing.

# I.  BACKGROUND

On April 24 and May 18, 1992, the Grand Jury indicted Barnett on forty-one felony sex offenses against minors.  On August 12, 1994, pursuant to a plea agreement, Barnett pled guilty to ten class A felonies and six class C felonies, stipulating *inter alia* to life with the possibility of parole.  When Barnett tendered his plea he was thirty-two years old, a college graduate, and had been represented by counsel at all times since his indictment.

On November 30, 1994, after a lengthy colloquy on the record, the Circuit Court of the Second Circuit, State of Hawaii ("circuit court") sentenced Barnett to: (a) ten life terms, with the possibility of parole, for the ten class A felonies; and (b) six five-year terms for the six class C felonies – all sentences to run concurrently.  Barnett did not file a direct appeal of his criminal conviction or sentence.  On March 10, 1995, the Hawaii Paroling Authority ("HPA") set Barnett's minimum term of imprisonment at twenty-five years.

Between June 23, 1995, and June 15, 2005, Barnett filed numerous motions and petitions for post-conviction relief in the circuit court challenging the legality of his plea and sentence .[4]  The State denied Barnett any relief.  Barnett

---

[4] Barnett filed his first Rule 35 motion on June 23, 1995 (withdrawn on August 21, 1995); first Rule 40 petition on December 25, 1995 (the Hawaii Supreme Court entered judgment affirming the denial of relief on August 13, 1999); second Rule 40 petition December

(continued...)

3

also filed a petition for writ of habeas corpus in federal district court on July 3,

2000, which was dismissed as unexhausted on November 2, 2000. *See Barnett*,

Civ. No. 00-00456 DAE. Barnett filed the instant Petition on September 19, 2007.

## II.  LEGAL STANDARD

When a court issues a writ of habeas corpus, it declares that the

petitioner is being held in custody in violation of his constitutional or other federal

rights. 28 U.S.C.A. § 2254(a); *Harvest v. Castro*, 531 F.3d 737 (9th Cir. 2008).

Thus, to obtain habeas corpus relief, a petitioner must demonstrate that his

conviction or punishment violates the federal constitution, a federal statute, or a

treaty. 28 U.S.C. § 2241(c)(3); *Bonin v. Calderon*, 59 F.3d 815 (9th Cir. 1995); *see

also Morris v. Ylst*, 447 F.3d 735 (9th Cir. 2006) (holding that the federal courts

may set aside a state conviction only if the habeas petitioner proves that his

detention violates the fundamental liberties of the person).

All federal habeas petitions filed after April 24, 1996, are governed by

the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.

---

[4](...continued)
29, 1997 (the Hawaii Supreme Court entered judgment affirming the denial of relief on January 20, 2004); second Rule 35 motion on July 27, 1999 (the Hawaii Supreme Court entered judgment affirming the denial of relief on April 19, 2001); third Rule 35 motion on March 8, 2001 (the Hawaii Supreme Court entered judgment affirming the denial of relief on July 26, 2004); and a third Rule 40 Petition on June 15, 2005 (the Intermediate Court of Appeals ("ICA") entered judgment affirming the denial of relief on July 5, 2007, Barnett did not seek certiorari from the Hawaii Supreme Court).

§ 2254. *Woodford v. Garceau*, 538 U.S. 202, 204 (2003); *Brown v. Farwell*, 525 F.3d 787, 792 (9th Cir. 2008). Under the AEDPA, habeas corpus relief may not be granted on any claim that was adjudicated on the merits in state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1),(2); *Williams v. Taylor*, 529 U.S. 362, 402-04 (2000).

A decision is contrary to federal law if the state court applies a rule of law that contradicts Supreme Court precedent, or if the state court makes a determination contrary to a Supreme Court decision on materially indistinguishable facts. *Brown*, 525 F.3d at 792. A state court unreasonably applies federal law when its application of Supreme Court precedent to the facts of petitioner's case is objectively unreasonable. *Id.* at 793 (citation omitted).

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Cooper v. Brown*, 510 F.3d 870, 919 (9th Cir. 2007) (*quoting Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)); *see also* 28 U.S.C. § 2254(e)(1)).

Clear and convincing evidence under § 2254(e) "requires greater proof than preponderance of the evidence" and must produce "an abiding conviction" that the factual contentions being advanced are "highly probable." *Cooper*, 510 F.3d at 919 (*quoting Sophanthavong v. Palmateer*, 378 F.3d 859, 866 (9th Cir. 2004)).  The presumption of correctness applies not only to express findings of fact, but also applies equally to unarticulated findings that are necessary to the state court's conclusions of mixed questions of fact and law.  *Cooper*, 510 F.3d at 919 (*citing Marshall v. Lonberger*, 459 U.S. 422, 433 (1983) (holding it proper to apply this presumption to a credibility determination which was implicit in the rejection of a defendant's claim)).  Where there are two permissible views of the evidence, a fact finder's choice between them cannot be clearly erroneous. *Cooper,* 510 F.3d at 919 (*citing Amadeo v. Zant*, 486 U.S. 214, 226 (1988)).

## III.  DISCUSSION

As a preliminary matter, in Ground Four of his Objection, Barnett argues that the court did not apply the "mailbox rule" when it determined the tolling period applicable to the time during which he pursued his third Rule 40 petition.  Barnett also points out that Respondent did not file a copy of Barnett's

third Rule 40 petition with his Answer, making it impossible to accurately

determine the tolling period.

Section 2244 provides in pertinent part:

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of —

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1) and (2).

In the Ninth Circuit, the "mailbox rule" applies to state post-

conviction proceedings so as to toll the limitations period under 28 U.S.C.

§ 2244(d).  *See Anthony v. Cambra*, 236 F.3d 568 (9th Cir. 2000).  As noted, under the "mailbox rule," a prisoner's legal document is deemed filed on the date the prisoner delivers it to prison officials for mailing.  *See Houston*, 487 U.S.  266 (1988).

Barnett correctly argues that the court did not give him the benefit of the "mailbox rule" in the May 9, 2008 Findings and Recommendation and that because Respondent failed to produce a copy of Barnett's third Rule 40 petition with the Answer, it was impossible for the court to accurately calculate tolling. Having now considered Barnett's Objection and having received a signed copy of Barnett's third Rule 40 petition, *see* Doc. No. 84, the record indicates that Barnett's Petition is timely.  As this Court finds that Barnett's Petition is timely under 28 U.S.C. § 2244(d), the court will reach the merit of Barnett's claims.

Barnett sets forth three grounds for relief in his Petition: (1) "Illegal Plea Agreement Relative to Enhanced Sentencing;" (2) "Illegal Sentence;" and (3) "Ineffective Assistance of Counsel."  Pet. at 2.

## A.   **Barnett's Plea Agreement Was Valid**.

Barnett argues that his guilty plea was invalid relative to the sentence he received.  He claims that he was induced to plead guilty to ten class A felonies under the presumption that he would receive only one single life term with the

possibility of parole, when in fact the circuit court sentenced Barnett to concurrent multiple life terms.  Barnett's claim lacks merit.

A plea is valid if it represents a voluntary, knowing, and intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States.*, 397 U.S. 742 (1970).  The petitioner bears the burden of establishing that his guilty plea was not voluntary and knowing. *Little v. Crawford*, 449 F.3d 1075, 1080 (9th Cir.2006) (*citing Parke v. Raley*, 506 U.S. 20, 31-34 (1992)), *cert. denied*, --- U.S. ---, 127 S.Ct. 2945 (2007).  To determine voluntariness, we examine the totality of the circumstances.  *Brady*, 397 U.S. at 749.  The defendant must understand the consequences of his plea, including "the range of allowable punishment that will result from his plea." *Tanner v. McDaniel*, 493 F.3d 1135, 1147 (9th Cir. 2007) (*quoting Little*, 449 F.3d at 1080).  "The essential ingredient is notice of 'the maximum possible penalty provided by law.'"  *Id.*

The governing standard as to whether a guilty plea is voluntary under the Constitution is a question of federal law and not a question of fact subject to the presumption of correctness established by 28 U.S.C. 2254(d).  *Marshall*, 459 U.S. at 431.  The related and underlying questions of fact are, however, presumed correct under 2254(d).  In addition, the findings made by the judge accepting the

9

plea "constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Doe v. Woodford*, 508 F.3d 563, 571 (9th Cir. 2007) (*citing Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

The record before the court clearly shows that Barnett voluntarily, knowingly, and intelligently entered his guilty plea on August 12, 1994.  In 1994 Barnett was a 32 year-old college graduate who had been represented by counsel throughout his entire criminal case.  Barnett was certainly capable of understanding the consequences of his plea including the maximum possible sentence allowable under the law.

In addition, the guilty plea form conspicuously lists "LIFE" as the maximum indeterminate sentence and "10 LIFE" as the extended maximum indeterminate sentence, for the charges against Barnett.  Barnett testified that he read and understood the terms of the plea and the guilty plea form.  See Ans. at App. C.  Barnett also willingly signed the guilty plea form.  *Id.*; *see also* Ans. at App. F.

Moreover, before accepting Barnett's guilty plea, the circuit court conducted a lengthy colloquy on the record to examine Barnett's knowledge and the voluntariness of his plea.  The colloquy included the following exchanges

COURT: "Have you had a chance to read . . . [the guilty plea form], go over it with your attorney, and have it explained to you by your attorney?"

BARNETT: "Yes, I have."

COURT: "Do you feel you understand what the form contains and what it means.?"

BARNETT: "Yes, I do."

COURT: "The maximum term as indicated on the form for all these charges is life imprisonment.  The maximum fine, $560,000.00.  **If this were to be extended the maximum sentence then could be up to 10 life terms.**  All right.  Do you understand all of these possibilities and the law as regards to your sentencing?"

BARNETT: "Yes, I do."

COURT: "Okay.  You still want to go ahead and plead no contest - - oh, this is a guilty, to this charge - - these charges?"

BARNETT: "Yes, I do."

COURT: "Is your mind clear now?"

BARNETT: "Yes, it is."

COURT: "All right.  Mr. Barnett, in paragraph five [of the guilty plea form] you say you plead guilty because after discussing all the evidence and receiving advice on the law from your lawyer you believe that you are guilty.  Is that true?"

BARNETT: "That's true."

COURT: "Is it your understanding that as part of the plea agreement in this case that you will be pleading guilty to the counts that are listed here in the guilty plea form . . .And further that you will be stipulating

to a single life term of imprisonment with the possibility of parole under Criminal Number 92-0196 for Counts 2, 9, 12, 16, 18, 25, 28, 31, 34 and 39.  These are all class A felonies.  While counts 1, 19, 21 and 36, which are all class C felonies, will carry the ordinary terms of imprisonment of an indeterminate term of five years to run concurrent to the life term imposed for the class A felonies . . . Is that your understanding of the agreement between you and the State in this matter?

BARNETT: "Yes, it is."

COURT: "Do you have any questions about the plea agreement?"

BARNETT: "No, I do not."

COURT: "Very well then, Mr. Barnett, I'm going to ask that you come up here and sign this form in front of me whereby you acknowledge that I questioned you personally in open court to acknowledge that you knew what you were doing prior to signing this form.  Upon the signing of the guilty plea form by the defendant the Court will find that he did knowingly, willingly, voluntarily and intelligently sign same, and accordingly, the Court will find you guilty of the charges listed in the . . . guilty plea form."

Ans. at App. C (emphasis added).

Upon conclusion of the colloquy, Barnett signed the guilty plea form

thereby certifying, among other things, that:

My lawyer has told me about the possible maximum indeterminate sentence indicated above for my offense.  He also explained to me the possibility of my indeterminate maximum term of imprisonment being extended and explained that I may have to serve a mandatory minimum term of imprisonment without possibility of parole . . .
I am signing this paper after I have gone over all of it together with my lawyer, and I am signing it in the presence of my lawyer.  I have

> no complaints about my lawyer and I am satisfied with what he has done for me.

Ans. at App. D.

Having considered the totality of the circumstances surrounding Barnett's guilty plea including his age, degree of education, the fact that he was represented by counsel, and the court's lengthy colloquy, it is difficult to imagine that Barnett did not knowingly and voluntarily enter into the plea agreement. Thus, Barnett has failed to meet his burden of establishing that his plea was not voluntary and knowing. Accordingly, the court **FINDS** that Barnett understood the consequences of his plea and was fully aware of the maximum possible penalty provided by law. The court, therefore, **RECOMMENDS** that Barnett's claim be DENIED.

### B.    Barnett's Sentence Is Legal.

Barnett argues that his sentence is illegal because that the plea agreement called for him to receive only one single life term rather than ten life sentences set to run concurrently. Barnett relies on *Santobello v. New York*, 404 U.S. 257 (1971), wherein the United States Supreme Court held that, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.* At 262. Barnett claims that the State's promise of one single life

13

term in exchange for Barnett's plea of guilty to ten class A felonies was not fulfilled.  Barnett is wrong.

As fully discussed above, the State did not promise or agree to one single life term in exchange for Barnett's guilty plea.  The guilty plea form clearly sets forth the minimum and maximum possible sentences.  Indeed, the guilty plea form conspicuously lists "LIFE" as the maximum indeterminate sentence and "10 LIFE" as the extended maximum indeterminate sentence, for the charges against Barnett.  No ambiguities in the plea agreement existed.  In addition, Barnett's intent and understanding of his guilty plea was clear and is so reflected in his colloquy with the circuit court.  The circuit court sentenced Barnett to a term within the bounds of the plea agreement, and therefore, fulfilled any promise it made under the agreement.

Barnett also appears to argue that his sentence violates the rule in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because the circuit court failed to find that an extended term of imprisonment was necessary for the protection of the public.  In *Apprendi*, the Supreme Court held that, other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proven beyond a reasonable doubt.  Barnett's argument misstates the *Apprendi* rule; that is, Barnett gets it

14

backward.  In fact, a finding that an extended term of imprisonment is necessary

for the protection of the public violates *Apprendi*.  This Court notes that, had the

circuit court made such a finding, and this finding came after *Apprendi* was

decided, it would have violated the *Apprendi* rule.  Barnett's reliance on *Apprendi*

is wrong.

First, the circuit court did not sentence Barnett to a term of

imprisonment beyond the maximum allowable under the statute.[5]  The circuit court

sentenced Barnett to life imprisonment, which constituted the maximum term of

imprisonment for a class A felony.

Second, in determining Barnett's sentence, the circuit court only

considered those facts that Barnett admitted to on the record at the August 12, 1994

change of plea hearing.  *See* Ans. at App. C, 7-15.  Thus, fully complying with the

*Apprendi* rule - even before *Apprendi* was decided.  *Apprendi*, 530 U.S. 466

(holding that any fact that increases the penalty for a crime beyond the prescribed

statutory maximum must be submitted to a jury and proven beyond a reasonable

---

[5] In 1994, Hawaii Revised Statutes § 706-661, stated, "[i]n the cases designated in section 706-662, a person who has been convicted of a felony may be sentenced to an extended indeterminate term of imprisonment.  When ordering such a sentence, the court shall impose the maximum length of imprisonment which shall be as follows:
(1) For a class A felony – life
(2) For a class B felony – twenty years; andd
(3) For a class C felony – ten years."

doubt).

Third, and most importantly, even if the circuit court violated

*Apprendi*, which it did not, the Ninth Circuit has spoken on this issue --   *Apprendi*

does not apply retroactively to cases on collateral review.  *Cooper-Smith v.*

*Palmateer*, 397 F.3d 1236, 1246 (9th Cir. 2005); *Reynolds v. Cambra*, 290 F.3d

1029, 1030 (9th Cir. 2002); *United States v. Sanchez-Cervantes*, 282 F.3d 664, 668-

71 (9th Cir. 2002).  Thus, this Court FINDS that Barnett's sentence is legal and

RECOMMENDS that his claim be DENIED.

### C.    Barnett Received Effective Assistance of Counsel.

Barnett alleges that his criminal attorney, Myles Breiner, Esq., failed

to inform Barnett of the law as it applies to sentencing thereby providing

ineffective assistance of counsel.  Barnett claims that he would not have accepted

the August 12, 1994 plea agreement had he known that each felony conviction

must receive a separate sentence.  Instead, Barnett suggests, he would have gone to

trial.  Barnett argues that he suffered prejudice when the HPA set his mandatory

minimum term at twenty-five years based on a sentence of ten concurrent life

sentences.  Specifically, Barnett claims that Mr. Breiner informed him that his

minimum term and parole eligibility would be based on one single life term, likely

resulting in a fifteen year mandatory minimum term.

Ineffective assistance of counsel claims are generally governed by

*Strickland v. Washington,* 466 U.S. 668 (1984), in which the Supreme Court

established a two-part inquiry:

> First, the defendant must show that counsel's performance was
> deficient. This requires showing that counsel made errors so serious
> that counsel was not functioning as the "counsel" guaranteed the
> defendant by the Sixth Amendment. Second, the defendant must show
> that the deficient performance prejudiced the defense. This requires
> showing that counsel's errors were so serious as to deprive the
> defendant of a fair trial, a trial whose result is reliable. Unless a
> defendant makes both showings, it cannot be said that the conviction
> or death sentence resulted from a breakdown in the adversary process
> that renders the result unreliable.

*Strickland,* 466 U.S. at 687; *see also Pinholster v. Ayers*, 525 F.3d 742, 756 (9th

Cir. 2008).  In determining whether an attorney's conduct was deficient, the

Supreme Court stressed that "the proper standard for attorney performance is that

of reasonably effective assistance," *Strickland,* 466 U.S. at 687, "viewed as of the

time of counsel's conduct," *id.* at 690, and considered "in light of all the

circumstances," *id.*  "Judicial scrutiny of counsel's performance must be highly

deferential." *Id.* at 689.  "Because of the difficulties inherent in making the

evaluation, a court must indulge a strong presumption that counsel's conduct falls

within the wide range of reasonable professional assistance; that is, the defendant

must overcome the presumption that, under the circumstances, the challenged

action 'might be considered sound trial strategy.'" *Id.*  (citation omitted).

17

Barnett has not shown that Mr. Breiner's performance was deficient. Mr. Breiner provided reasonably effective assistance under the circumstances. Based on the record before the court, pursuant to Barnett's instruction, Mr. Breiner engaged in lengthy plea negotiations with the State.  Although Barnett was charged with forty-one felony crimes and faced up to a maximum possible sentence of 610 years, Mr. Breiner managed to negotiate a plea agreement wherein the State agreed to drop twenty-five of the charges, leaving Barnett to serve what effectively is a single life term with the possibility of parole.  Certainly, in the face of a 610-year term of imprisonment, negotiating what is effectively a single life term constitutes "reasonable professional assistance."  *See Strickland,* 466 U.S. at 689.

Moreover, as noted above, prior to signing the guilty plea form Barnett testified that he read and understood the terms of the plea agreement.  Ans. at App. C.  The plea agreement form clearly listed "10 LIFE" as the extended maximum indeterminate sentence.  Barnett also testified to his satisfaction of Mr.

Breiner's representation.  Barnett engaged in the following exchange with the

circuit court

> COURT: "Have you had a chance to read this form, go over it with
> your attorney, and have it explained to you by your attorney?"
>
> BARNETT: "Yes, I have."
>
> COURT: "All right.  Do you feel you understand what the form
> contains and what it means?"
>
> BARNETT: "Yes, I do."
>
> COURT: "Are you satisfied with the services of your attorney?"
>
> BARNETT: "Very much so."

*Id.* at 2-3.

Even if Barnett met the first part of the two-prong test, which he has

not, Barnett suffered no prejudice as a result of Mr. Breiner's representation.

Barnett claims that he suffered prejudice when the HPA set his mandatory

minimum term of imprisonment based on ten concurrent life sentences rather than

one single life sentence.  Barnett appears to argue that had the HPA set his

mandatory minimum term based on only one single life sentence rather than ten, it

would have resulted in a shorter mandatory minimum term thereby, making him

eligible for parole sooner.  Barnett's argument lacks merit.

Under Hawaii law, all committed persons, except those sentenced to life imprisonment without the possibility of parole, shall be considered for parole. *See* Haw. Rev. Stat. § 353-62(a). The HPA, "shall . . . hold a hearing, and on the basis of the hearing make an order fixing the minimum term of imprisonment to be served before the prisoner shall become eligible for parole." Haw. Rev. Stat. § 706-669. In Hawaii, a prisoner has no right to have his minimum term set at a period shorter than the maximum sentence. *Williamson v. Hawaii Paroling Authority*, 35 P.3d 210, 223 (Haw. 2001). "[A] prisoner who, after the appropriate hearing, has his or her minimum term set at a period equal to his or her maximum sentence has been 'subject to parole.'" *Id.* at 218 (citation omitted). Here, even if the HPA based Barnett's mandatory minimum term on one single life sentence, Barnett faced a mandatory minimum term of life imprisonment. Thus, Barnett suffered no prejudice when the HPA set his mandatory minimum term at twenty-five years.

In addition, under the Hawaii Guidelines for Determining Minimum Terms of Imprisonment, whether Barnett received ten life sentences or one, is irrelevant. The heinous nature of Barnett's crimes subjected him to Level III status. *See* Hawaii Paroling Authority, Guidelines for Minimum Terms of Imprisonment (1989). Level III status is given to any inmate whose "offense was

committed against . . . a minor, and the conviction was for . . . sexual assault." *Id.*
at 5.  An inmate whose maximum term imposed by the circuit court is life
imprisonment, and whose level of punishment is Level III, faces a mandatory
minimum term of twenty to fifty years imprisonment.  Thus, although Barnett
argues that Mr. Breiner told him to expect a fifteen year mandatory minimum term,
even if Barnett had only received one single life sentence, under the Guidelines
Barnett still faced a mandatory minimum term of twenty to fifty years
imprisonment.  *See Id.*  Barnett's twenty-five year mandatory minimum term falls
well within the Guidelines.

Barnett has not shown that Mr. Breiner's conduct was deficient nor
that he suffered prejudice as a result of Mr. Breiner's representation.  This Court,
therefore, FINDS that Barnett received effective assistance of counsel and
RECOMMENDS that Barnett's claims be DISMISSED.

## IV.  CONCLUSION

This court FINDS that Barnett's claims lack merit and, therefore,
RECOMMENDS that Barnett's Petition be DISMISSED in its entirety.  Barnett's
Motion for Determination that Barnett's Current Petition was Timely Filed is
DENIED as moot.

IT IS SO FOUND AND RECOMMENDED.

DATED: Honolulu, Hawaii, September 29, 2008.



    /S/ Barry M. Kurren
Barry M. Kurren
United States Magistrate Judge

*Barnett v. Thomas*, Civ. No. 07-00491 SOM-BMK; SUPPLEMENTAL FINDINGS AND RECOMMENDATION TO DISMISS PETITION; hmg\Habeas 08\Barnett 07-491 SOM (rev'd F&R merits)